

**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

January 27, 2025

M-25-13

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

FROM:　　　　Matthew J. Vaeth, Acting Director, Office of Management and Budget

SUBJECT:　　Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs

The American people elected Donald J. Trump to be President of the United States and gave him a mandate to increase the impact of every federal taxpayer dollar. In Fiscal Year 2024, of the nearly $10 trillion that the Federal Government spent, more than $3 trillion was Federal financial assistance, such as grants and loans. Career and political appointees in the Executive Branch have a duty to align Federal spending and action with the will of the American people as expressed through Presidential priorities. Financial assistance should be dedicated to advancing Administration priorities, focusing taxpayer dollars to advance a stronger and safer America, eliminating the financial burden of inflation for citizens, unleashing American energy and manufacturing, ending "wokeness" and the weaponization of government, promoting efficiency in government, and Making America Healthy Again. The use of Federal resources to advance Marxist equity, transgenderism, and green new deal social engineering policies is a waste of taxpayer dollars that does not improve the day-to-day lives of those we serve.

This memorandum requires Federal agencies to identify and review all Federal financial assistance[1] programs and supporting activities consistent with the President's policies and requirements.[2]  For example, during the initial days of his Administration, President Donald J. Trump issued a series of executive orders to protect the American people and safeguard valuable taxpayer resources, including *Protecting the American People Against Invasion* (Jan. 20, 2025), *Reevaluating and Realigning United States Foreign Aid* (Jan. 20, 2025), *Putting America First in International Environmental Agreements* (Jan. 20, 2025), *Unleashing American Energy* (Jan. 20, 2025), *Ending Radical and Wasteful Government DEI Programs and Preferencing* (Jan. 20,

---

[1] 2 CFR 200.1 defines Federal financial assistance to mean "[a]ssistance that recipients or subrecipients receive or administer" in various forms, but this term does not include assistance provided directly to individuals. For the purposes of this memorandum, Federal financial assistance includes: (i) all forms of assistance listed in paragraphs (1) and (2) of the definition of this term at 2 CFR 200.1; and (ii) assistance received or administered by recipients or subrecipients of any type except for assistance received directly by individuals.

[2] Nothing in this memo should be construed to impact Medicare or Social Security benefits.

2025), *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), and *Enforcing the Hyde Amendment* (Jan. 24, 2025).

DHS-AR-0001

These executive orders ensure that Federal funds are used to support hardworking American families.

To implement these orders, each agency must complete a comprehensive analysis of all of their Federal financial assistance programs to identify programs, projects, and activities that may be implicated by any of the President's executive orders. In the interim, to the extent permissible under applicable law, Federal agencies **must temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by the executive orders, including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal.

This temporary pause will provide the Administration time to review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities. The temporary pause will become effective on January 28, 2025, at 5:00 PM. Even before completing their comprehensive analysis, Federal agencies must immediately identify any legally mandated actions or deadlines for assistance programs arising while the pause remains in effect. Federal agencies must report this information to OMB along with an analysis of the requirement. OMB also directs Federal agencies to pause all activities associated with open NOFOs, such as conducting merit review panels.

No later than February 10, 2025, agencies shall submit to OMB detailed information on any programs, projects or activities subject to this pause. Each agency must pause: (i) issuance of new awards; (ii) disbursement of Federal funds under all open awards; and (iii) other relevant agency actions that may be implicated by the executive orders, to the extent permissible by law, until OMB has reviewed and provided guidance to your agency with respect to the information submitted.

OMB may grant exceptions allowing Federal agencies to issue new awards or take other actions on a case-by-case basis. To the extent required by law, Federal agencies may continue taking certain administrative actions, such as closeout of Federal awards (2 CFR 200.344), or recording obligations expressly required by law.

Additionally, agencies must, for each Federal financial assistance program: (i) assign responsibility and oversight to a senior political appointee to ensure Federal financial assistance conforms to Administration priorities; (ii) review currently pending Federal financial assistance announcements to ensure Administration priorities are addressed, and, subject to program statutory authority, modify unpublished Federal financial assistance announcements, withdraw any announcements already published, and, to the extent permissible by law, cancel awards already awarded that are in conflict with Administration priorities, and; (iii) ensure adequate oversight of Federal financial assistance programs and initiate investigations when warranted to identify underperforming recipients, and address identified issues up to and including cancellation of awards.

DHS-AR-0002



*Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528

# Homeland Security

February 19, 2025

## MEMORANDUM FOR ALL AGENCIES AND OFFICES

FROM:      Kristi Noem
                Secretary

SUBJECT:    **Restricting Grant Funding for Sanctuary Jurisdictions**

---

Following the horrific attacks on this country on September 11, 2001, the American people trusted their leaders to make sure it would never happen again. Among the circumstances that led to those attacks was the failure to treat immigration as a national security issue. The 9/11 Commission Report, for example, recognized that "the institutions charged with protecting our borders . . . did not understand how grave th[e] threat could be." 9/11 Commission Report at xvi. The Commission also specifically noted that there were, at that time, "9 million people . . . in the United States outside the legal immigration system." *Id.* at 390. A second factor recognized by the Commission was the failure of different law enforcement entities to share information. The Report recognized "pervasive problems of managing and sharing information across a large and unwieldy government." *Id.* at xvi.

The year after those terrible attacks, President George W. Bush signed into the law the Homeland Security Act of 2002. The Act created the Department of Homeland Security (DHS), and it transferred into that new agency a number of important national security components, including those responsible for immigration enforcement. Congress expressly found that "State and local personnel have capabilities and opportunities to gather information on suspicious activities and terrorist threats not possessed by Federal agencies." 6 U.S.C. § 481(b)(8). Congress also found that "[t]he Federal Government relies on State and local personnel to protect against terrorist attack." *Id.* § 481(b)(2).

The bottom line is that partnership is an essential element of our national security and public safety mission. And that mission undoubtedly includes immigration enforcement. State and local governments that refuse to cooperate with, refuse to share information with, or even actively obstruct federal immigration enforcement reject these ideals and the history we share in common as Americans. If any government entity chooses to thumb its nose at the Department of Homeland Security's national security and public safety mission, it should not receive a single dollar of the Department's money unless Congress has specifically required it.

For purposes of this memorandum, "sanctuary jurisdictions" include the following:

- Jurisdictions that fail to comply with the information sharing requirements of 8 U.S.C. §§ 1373 and 1644.

Prohibiting Grant Funding for Sanctuary Jurisdictions
Page 2

- Jurisdictions that violate other relevant laws, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, *id.* § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, *id.* § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability respecting these statutes.

- Jurisdictions that fail to honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of alien pursuant to a valid detainer. A jurisdiction, however, is not a sanctuary jurisdiction merely because it lacks the necessary resources to assist in a particular instance.

- Any jurisdiction that fails to provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien.

- Any jurisdiction that leaks the existence of an enforcement operation.

All components are to review all federal financial assistance awards to determine if Department funds, directly or indirectly, are going to sanctuary jurisdictions. To the extent consistent with relevant legal authorities and the applicable terms and conditions of each award, each component must cease providing federal funding to sanctuary jurisdictions. Components should also make appropriate criminal referrals to the Department of Justice where illegal conduct is discovered.

For questions regarding applicable legal authorities, components must consult with the General Counsel or his designee. For questions regarding whether a particular jurisdiction is a sanctuary jurisdiction, components must consult with the Director of Immigration and Customs Enforcement and the Commissioner of Customs and Border Protection or their designees.

Within 30 days, each component shall provide a report to the Undersecretary for Management with a summary of actions taken to comply with this memorandum.

**Annex D: Charter**

February 21, 2025

**SECURING THE CITIES IMPROVEMENTS**

**CHARTER**

FROM:     David Richardson
          Assistant Secretary
          Countering Weapons of Mass Destruction Office

TO:       Christopher Magrino
          Deputy Assistant Secretary
          Operations Support Directorate

SUBJECT:  CWMD Securing the Cities Program Improvements

1.   **Objective and Scope of Activities:**

     The Securing the Cities (STC) Improvement Team will update the STC Program Management Plan, by defining, assessing, and then correcting the performance deficiencies against the STC statutory requirements.

2.   **Member Composition**

     The STC Improvement Team consists of the following:

     Lead: DAS Chris Magrino

| STC: Frierson, All | Policy: Kaiser, Baker |
|---|---|
| OAS: Antognoli, Khan | Strategy: Bilicic, Abide, Houston, Schluger |
| MDDP: Kuleski, Simons | Preparedness: Hearns, Hyland |
| Risk: Munns, Wells | IAD: Joyner, Gebhards, Strickland, Whitehurst |

3.   **Reporting Requirements:**

     The STC Improvements Team will provide status updates to CWMD Assistant Secretary bi-weekly. Final STC PMP shall be completed with Assistant Secretary signature on or before 15 April 2025.

1

DHS-AR-0005

This document is scheduled to be published in the Federal Register on 03/03/2025 and available online at **https://federalregister.gov/d/2025-03527**, and on **https://govinfo.gov**

EXECUTIVE ORDER

14222

- - - - - - -

IMPLEMENTING THE PRESIDENT'S "DEPARTMENT OF GOVERNMENT EFFICIENCY" COST EFFICIENCY INITIATIVE

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

Section 1.  Purpose.  This order commences a transformation in Federal spending on contracts, grants, and loans to ensure Government spending is transparent and Government employees are accountable to the American public.

Sec. 2.  Definitions.  As used in this order:

(a)  "Administrator" means the Administrator of the United States DOGE Service, as defined in Executive Order 14158 of January 20, 2025 (Establishing and Implementing the President's "Department of Government Efficiency").

(b)  "Agency" has the meaning given to that term in section 3502 of title 44, United States Code, except that such term does not include the Executive Office of the President or any components thereof.

(c)  "Agency Head" means the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director.  Agency Heads may select designees within their agencies to carry out the responsibilities specified in this order.

(d)  "Covered contracts and grants" means discretionary spending through Federal contracts, grants, loans, and related instruments, but excludes direct assistance to individuals; expenditures related to immigration enforcement, law enforcement, the military, public safety, and the intelligence community; and other critical, acute, or emergency spending, as

DHS-AR-0006

2

determined by the relevant Agency Head.  Notification shall be made to the agency's DOGE Team Lead.

(e)  "DOGE Team Lead" means the leader of the DOGE Team at each agency, as defined in Executive Order 14158.

Sec. 3.  Cutting Costs to Save Taxpayers Money.  (a) *Contract and Grant Justification.*  Each Agency Head shall, with assistance as requested from the agency's DOGE Team Lead, build a centralized technological system within the agency to seamlessly record every payment issued by the agency pursuant to each of the agency's covered contracts and grants, along with a brief, written justification for each payment submitted by the agency employee who approved the payment.  This system shall include a mechanism for the Agency Head to pause and rapidly review any payment for which the approving employee has not submitted a brief, written justification within the technological system.

(i)  Once the system described in subsection (a) of this section is in place, the Agency Head shall issue guidance, in consultation with the agency's DOGE Team Lead, to require that the relevant agency employee promptly submit a brief, written justification prior to that employee's approval of a payment under covered contracts and grants, subject to any exceptions the Agency Head deems appropriate.

(ii)  To the maximum extent permitted by law, and to the maximum extent deemed practicable by the Agency Head, the payment justifications described in subsection (a)(i) of this section shall be posted publicly.

(b)  *Review of Covered Contracts and Grants*.  Each Agency Head, in consultation with the agency's DOGE Team Lead, shall

DHS-AR-0007

3

review all existing covered contracts and grants and, where appropriate and consistent with applicable law, terminate or modify (including through renegotiation) such covered contracts and grants to reduce overall Federal spending or reallocate spending to promote efficiency and advance the policies of my Administration.  This process shall commence immediately and shall prioritize the review of funds disbursed under covered contracts and grants to educational institutions and foreign entities for waste, fraud, and abuse.  Each Agency Head shall complete this review within 30 days of the date of this order.

(c)  *Contract and Grant Process Review*.  Each Agency Head, in consultation with the agency's DOGE Team Lead, shall conduct a comprehensive review of each agency's contracting policies, procedures, and personnel.  Each Agency Head shall complete this process within 30 days of the date of this order and shall not issue or approve new contracting officer warrants during the review period, unless the Agency Head determines such approval is necessary.

(d)  *Covered Contract and Grant Approval*.

(i)  Following the review specified in subsection (c) of this section, and prior to entering into new contracts, each Agency Head shall, in consultation with the agency's DOGE Team Lead, issue guidance on signing new contracts or modifying existing contracts to promote Government efficiency and the policies of my Administration.  The Agency Head may approve new contracts prior to the issuance of such guidance on a case-by-case basis.

(ii)  Each DOGE Team Lead shall provide the Administrator with a monthly informational report on contracting activities.  As soon as an agency's

DHS-AR-0008

4

contract and grant justification process described in subsection (a) of this section is established, this report shall include all payment justifications provided pursuant to that process, to the extent consistent with law.

(e) *Non-Essential Travel Justification.* Each Agency Head shall, with assistance from the agency's DOGE Team Lead, build a technological system within each agency that centrally records approval for federally funded travel for conferences and other non-essential purposes. Once an agency's system is in place, the Agency Head shall prohibit agency employees from engaging in federally funded travel for conferences or other non-essential purposes unless the travel-approving official has submitted a brief, written justification for the federally funded travel within such system. Each DOGE Team Lead shall, to the extent consistent with law, provide the Administrator with a monthly informational report listing each agency's justifications for non-essential travel. Such justifications shall be posted publicly unless prohibited by law or unless the Agency Head grants an exemption from this requirement.

(f) *Credit Card Freeze.* To the maximum extent permitted by law, all credit cards held by agency employees shall be treated as frozen for 30 days from the date of this order, except for any credit cards held by employees engaged in, or charges related to employees utilizing such credit cards for, disaster relief or natural disaster response benefits or operations or other critical services as determined by the Agency Head, and subject to such additional individualized or categorical exceptions as the Agency Head, in consultation with the agency's DOGE Team Lead, deems appropriate.

DHS-AR-0009

5

(g)  *Real Property Disposition.*  Agencies shall take the following actions:

(i)  *Real Property Report.*  Within 7 days of the date of this order, each Agency Head shall confirm to the Administrator of General Services or his designee that the Agency Head has submitted updates to the Federal Real Property Profile Management System to ensure the system reflects a complete and accurate inventory of real property subject to the agency's administration.

(ii)  *Real Property Leases.*  Within 30 days of the date of this order, each Agency Head shall promptly identify all termination rights the Agency Head may have under existing leases of Government-owned real property and, in consultation with agency's DOGE Team Lead and the Administrator of General Services or his designee, determine whether to exercise such rights.

(iii)  *Real Property Disposition.*  Within 60 days of the date of this order, the Administrator of General Services shall submit a plan to the Director of the Office of Management and Budget (OMB) for the disposition of Government-owned real property which has been deemed by the agency as no longer needed.

Sec. 4.  General Exclusions.  This order does not apply to:

(a)  Law enforcement officers, as defined in 5 U.S.C. 5541(3) and 5 C.F.R. 550.103, or covered contracts and grants directly related to the enforcement of Federal criminal or immigration law;

(b)  U.S. Customs and Border Protection and U.S. Immigration and Customs Enforcement in the Department of Homeland Security;

DHS-AR-0010

6

(c)   the Uniformed Services, as defined in 20 C.F.R. 404.1330;

(d)   any other covered grant or contract, agency component, or real property that the relevant Agency Head exempts in writing from all or part of this order, in consultation with the agency's DOGE Team Lead and the Director of OMB; or

(e)   classified information or classified information systems.

Sec. 5. General Provisions. (a) Nothing in this order shall be construed to impair or otherwise affect:

(i)   the authority granted by law to an executive department or agency, or the head thereof; or

(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b)   This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c)   This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,

February 26, 2025.

[FR Doc. 2025-03527 Filed: 2/28/2025 11:15 am; Publication Date:  3/3/2025]

DHS-AR-0011

U.S. Department of Homeland Security
Washington, DC 20528



MEMORANDUM FOR:    Heads of the Contracting Activities
Component Chief Financial Officers

FROM:    Stacy Marcott
Acting Chief Financial Officer

PAUL R COURTNEY
Digitally signed by PAUL R COURTNEY
Date: 2025.03.03 12:41:59 -05'00'

Paul Courtney
Chief Procurement Officer

SUBJECT:    Pause on Payments for Contracts and Grants

REFERENCE:    Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative Executive Order (EO)

The purpose of this joint memorandum is to provide Department of Homeland Security (DHS) guidance related to pause on payments for contracts and grants in relation to the Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative Executive Order (EO).

**<u>Background</u>**

EO "Department of Government Efficiency" (DOGE) Cost Efficiency Initiative was issued on February 26, 2025. In relation to contract and grant payments, awards, terminations and modifications, the EO directs each Agency Head to:

➢ Build a centralized technological system to record every payment issued by the agency pursuant to each of the agency's covered contracts and grants[1], with a brief, written justification for each payment; This system shall include a mechanism for the Agency Head to pause and rapidly review any payment for which the approving employee has not submitted a brief, written justification within the technological system.

➢ Issue guidance to require that the relevant agency employee promptly submit a brief, written justification prior to that employee's approval of a payment under covered contracts and grants, subject to any exceptions the Agency Head deems appropriate. Payment justifications described shall be posted publicly as practicable and permitted by law.

---

[1] As defined in the EO Section 2, "Covered contracts and grants" means discretionary spending through Federal contracts, grants, loans, and related instruments, but excludes direct assistance to individuals; expenditures related to immigration enforcement, law enforcement, the military, public safety, and the intelligence community; and other critical, acute, or emergency spending, as determined by the relevant Agency Head. Notification shall be made to the agency's DOGE Team Lead.

DHS-AR-0012

Pause on Payments for Contracts and Grants
Page 2

> Review all existing covered contracts and grants, and where appropriate and lawful, terminate or modify covered contracts and grants to reduce overall Federal spending or reallocate spending to promote Government efficiency and advance the policies of the Administration with prioritization of the review of funds disbursed under covered contracts and grants to educational institutions and foreign entities for waste, fraud, and abuse. The review must be completed within 30 days of the EO issuance. Following the review, Agency Heads shall issue guidance on signing new contracts or modifying existing contracts to promote Government efficiency and promote the Administration's policies. The Agency Head may approve new contracts prior to the issuance of such guidance on a case-by-case basis.
> Review of each agency's contracting policies, procedures, and personnel, and stop issuing or approving new contracting officer warrants during the review period. This must be completed within 30 days of the EO issuance.

All these activities must be accomplished with assistance and in consultation with the agency DOGE Team Lead as explained in the EO.

Implementation

Until such time as the information system is in place to manage payment approvals, or further guidance is issued, DHS will pause payments to all covered contracts and grants under the EO[2]. The Prompt Payment Act, 31 U.S.C. 3901 et seq. may apply. If a contract or grant falls under an exclusion in the EO, the program official shall provide the payment approver with the exclusion using Attachment 1. Payment approvers must retain documentation of this exclusion.

Exclusions

(a) Law enforcement officers, as defined in 5 U.S.C. 55 1(3) and 5 C.F.R. 550.103, or covered contracts and grants directly related to the enforcement of Federal criminal or immigration law;

(b) U.S. Customs and Border Protection and U.S. Immigration and Customs Enforcement in the Department of Homeland Security;

(c) the Uniformed Services, as defined in 20 C.F.R. 0 .1330;

(d) any other covered grant or contract, agency component, or real property that the relevant Agency Head exempts in writing from all or part of this order, in consultation with the agency's DOGE Team Lead and the Director of OMB; or

(e) classified information or classified information systems.

Attachment: Template Certification of Compliance with Executive Order, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative

---

[2] See above

DHS-AR-0013

Pause on Payments for Contracts and Grants
Page 3

Distribution:

Heads of Contracting Activities
Senior Financial Officer for the following Components:
Countering Weapons of Mass Destruction Office
Cybersecurity and Infrastructure Security Agency
Federal Emergency Management Agency
Federal Law Enforcement Training Centers
Management Directorate
Office of Inspector General
Office of Intelligence and Analysis

Office of Homeland Security Situational Awareness
Science and Technology Directorate
Transportation Security Administration
U.S. Citizenship and Immigration Services
U.S. Coast Guard
U.S. Customs and Border Protection
U.S. Immigration and Customs Enforcement
U.S. Secret Service

cc:
Director, Financial Management, Office of the Chief Financial Officer

DHS-AR-0014

## Harvey, Ki

| | |
|---|---|
| **From:** | Osterhus, Diane |
| **Sent:** | Thursday, March 6, 2025 4:39 PM |
| **To:** | Yin, Tai |
| **Cc:** | Elliott, James; Harvey, Ki; Osterhus, Diane |
| **Subject:** | RE: Seattle - STC funding authorization 2 |

Hello Tai,

Thank you for your question.  It is not necessary or typical to extend budget periods within an on-going project period.  The only time a budget/project period may be extended is at the end of a project.  In this case, you may obligate the funds for the training  within the budget period (seems like you've done this already) and actually pay out the funds within the next budget period.  This is often the case moving from one budget period into the next one._ If you have carryover funds, use them for this expenditure.

If you have questions, please let me know.

Kind Regards,

Diane


**Diane J. Osterhus**
Program Analyst
Office of Procurement Operations
Office of the Chief Procurement Officer
U.S. Department of Homeland Security
T: 202-768-8211

**From:** Yin, Tai <Tai.Yin@seattle.gov>
**Sent:** Wednesday, March 5, 2025 3:57 PM
**To:** Osterhus, Diane <diane.osterhus@HQ.DHS.GOV>; Elliott, James <James.Elliott@seattle.gov>; Harvey, Ki <ki.harvey@hq.dhs.gov>
**Subject:** RE: Seattle - STC funding authorization

Hello,

In preparing the contract for this training with Seattle Police Department, it appears the desired dates to complete the training are in June 2025. Our current budget period ends June 30, 2025. To facilitate the training and allow time for agencies to invoice for their overtime/backfill, we would need to go beyond the June 30, 2025. Would it be possible to amend the existing award to provide more time in the budget period to allow for invoicing?

Please let me know how you'd like to proceed on this.

Thank you,

**Tai Yin**

1

DHS-AR-0015

Grants Manager
Seattle Police Department
610 Fifth Avenue | PO Box 34986
Seattle, WA 98124-4986
(206) 233-3722
tai.yin@seattle.gov

---

**From:** Osterhus, Diane <diane.osterhus@HQ.DHS.GOV>
**Sent:** Tuesday, February 4, 2025 10:56 AM
**To:** Elliott, James <James.Elliott@seattle.gov>; Harvey, Ki <ki.harvey@hq.dhs.gov>
**Cc:** Yin, Tai <Tai.Yin@seattle.gov>; Osterhus, Diane <diane.osterhus@HQ.DHS.GOV>
**Subject:** RE: Seattle - STC funding authorization

| CAUTION: External Email |
|---|

Hello Mr. Elliott,

Your request has been approved.

Kind Regards,


*Diane J. Osterhus*

Senior Policy Officer
Grants and Financial Assistance Division (GFAD)
OPO/OCPO/Mgmt. Directorate
Dept. of Homeland Security

---

**From:** Elliott, James <James.Elliott@seattle.gov>
**Sent:** Tuesday, February 4, 2025 12:43 PM
**To:** Osterhus, Diane <diane.osterhus@HQ.DHS.GOV>; Harvey, Ki <ki.harvey@hq.dhs.gov>
**Cc:** Yin, Tai <Tai.Yin@seattle.gov>
**Subject:** Seattle - STC funding authorization

| CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact your component SOC with questions or concerns. |
|---|

Ms. Osterhaus and Mr. Harvey – Good afternoon. On behalf of the Seattle STC PMO, the Seattle PD requests approval to transfer $100,000 in budgeted STC Cooperative Agreement Funds from Equipment line item to Contractual line to fund anticipated OT costs for Joint Hazard Assessment Team (JHAT) training for area fire agencies.

In anticipation of upcoming World Cup Club Soccer and World Cup Soccer Games, SEA STC in cooperation with Seattle Fire Department (SFD) will provide JHAT training to area fire agency hazardous materials teams. In prior phone conversations with Mr. Harvey and Ms. Frierson, $100,000 has been agreed to for anticipated OT/backfill training costs for participating agencies.

Per the attached email request from Captain Ryan Nash, Seattle Fire Haz-Mat, they will be conducting training for multiple outside agencies, with up to 30 personnel per agency, at an estimated rate of $90 per hour. Funds will be disbursed to SFD per individual agency voucher submitted to STC for reimbursement.

If you have any questions, please don't hesitate to contact me at your convenience.

2

DHS-AR-0016

Thank you,


James Elliott
Program Manager
Securing the Cities Grant
206-886-5585

DHS-AR-0017

PRE-DECISIONAL/DELIBERATIVE

U.S. Department of Homeland Security
Washington, DC 20528



**Homeland Security**

March 21, 2025

MEMORANDUM FOR ALL COMPONENT HEADS

FROM:              Troy Edgar
                   Deputy Secretary

SUBJECT:           **Guidance on DHS Contract and Grant Awards/Terminations;
                   Agency Reorganization and Reduction in Force Plans; and Systems
                   and Data Warehouse Access**

Effective immediately and until further notice, the Deputy Secretary's Office will review and approve contract and grant awards over $25M and all contract and grant terminations. This applies to all awards (over $25M) and terminations, in full or in part, regardless of dollar amount, before they are executed. Relevant details will need to be identified, including any mission impact, dollar values, description of the grant or contract's supplies or services, and a description of the proposed action.

The Deputy Secretary's Office will review and approve all Agency reorganization and Reduction in Force (RIF) plans. This applies to all reorganization and RIF plans regardless of size or scope, before they are executed. Relevant details will need to be identified to include mission impact, personnel numbers, budgetary impact and any statutory considerations.

Additionally, the Deputy Secretary's Office will review and approve any Agency hiring freezes. This applies to all hiring freeze regardless of scope, before they are executed. Relevant details will need to be identified to include mission impact, target positions and total number of positions to remain unfilled.

Finally, the Deputy Secretary's Office will review and approve requests made by Department of Government Efficiency (DOGE) for access to any DHS system or data warehouse. This applies to all requests, before access is granted. Any access previously granted to DHS systems and data warehouses should be sent via memorandum to the Deputy Secretary's Office for review and further determination of continued access.

The Chief Procurement Officer, Chief Human Capital Officer and Acting Chief Financial Officer will communicate my direction to their Agency counterpart and will provide direction and guidance on the process.

DHS-AR-0018

# Securing the Cities Program Improvements Action Plan

April 15, 2025


Homeland Security

DHS-AR-0019

**Executive Summary:** The Securing the Cities (STC) Improvement Working Group commenced February 27, 2025, with the charge to make the program more efficient and effective. The working group resulted in the Concept Paper for STC Program Improvements that was presented to and approved by A/S Richardson on April 4, 2025. The plan outlined material changes to STC and the Mobile Detection Deployment Program (MDDP). The two programs developed the Action Plan to execute desired program changes.

Actions within are to begin immediately with full implementation no later than by 30 September 2027.

David E. Richardson
Assistant Secretary

1

DHS-AR-0020

## ACTION PLAN

I.    **Background:** The Securing the Cities (STC) Improvement Working Group commenced February 27, 2025, with the charge to make the program more efficient and effective. The group identified four areas for improvement:

| | |
|---|---|
| 1 | Incorporation/collaboration of other Countering Weapons of Mass Destruction (CWMD) and interagency programs with similar missions. |
| 2 | Budgets based upon need. |
| 3 | Training and proficiency of SLTT operators. |
| 4 | Inconsistent application of threat/risk to resource individual STC cities. |

The working group resulted in the Concept Paper for STC Program Improvements that was presented to and approved by A/S Richardson on April 4, 2025. The plan outlined material changes to STC and the Mobile Detection Deployment Program (MDDP). All MDDP assets will fall under the management of the STC Program and become STC assets. STC regions will maintain existing linkages to the Federal Bureau of Investigation (FBI) Level 5 Regional Render Safe Teams (RRST). Aligning the Mobile Detection Deployment Unit (MDDU) teams with FBI Level-5 teams provides the United States Government a detection capability sufficient for a holistic regional response to detect, secure, and defeat radiological and nuclear (R/N) devices. The state, local, tribal, and territorial (SLTT) partners in each region will concentrate on primary screening, while federal assets and experienced SLTT agencies will conduct secondary screening. The federal assets are CWMD MDDP Units, FBI Level 3 and Level 5 RRST, DOE National Nuclear Security Administration (NNSA) Radiological Assistance Program (RAP) Teams, and FBI-trained SLTT bomb squads. The experienced SLTT agencies are FBI vetted legacy STC secondary screening assets. Each STC region will host a federal MDDU that will coordinate with SLTT regional primary screeners and with other secondary screening assets within and outside of the STC area of operation to perform the following:

- On-Call assets to support FBI search operations
- Regional expertise on training and equipment employment
- Requested secondary screening,
- Steady-state surge operations in the region and pathways into the region,
- Enhanced steady-state operations (including special events),
- Participation/support in training and exercises, and
- Intelligence driven operations.

**Resources and Logistics:** This concept is budget neutral and increases the number of MDDUs by using existing MDDP and STC funds. The STC Program will continue administering the cooperative agreements to cover federally procured primary screening equipment distribution, regional STC program manager funding, training and exercise support funding, and

2

backfill/overtime funding for training and exercise activities. The above concept will require an additional seven STC-based MDDUs (three in FY26 and four in FY27).

**Coordination:** Interagency coordination on this concept is essential for success. CWMD will socialize plans with key Federal Partners and then SLTT operational partners. A closer link will be created within each city by pairing and locating the MDDU within the area of operation of the FBI Level 5 Regional Render Safe teams.

## II. Mission:

**a.** Per 6 USC 592(a), CWMD's statutory mission is as follows: "*The Office shall be responsible for coordinating Federal efforts to detect and protect against the unauthorized importation, possession, storage, transportation, development, or use of a nuclear explosive device, fissile material, or radiological material in the United States, and to protect against attack using such devices or materials against the people, territory, or interests of the United States.*"

**b.** Per the 2020 Mission Validation, CWMD's mission is: "*CWMD leads DHS efforts and coordinates with domestic and international partners to safeguard the United States against CBRN and health security threats.*"

**c. Operations Support Directorate Mission Essential Tasks:**

| OSD Mission Essential Tasks | |
| --- | --- |
| 1 | Coordinate federal efforts to detect and protect against the unauthorized importation, possession, storage, transportation, development, or use of a nuclear explosive device, fissile material, or radiological material in the United States, and to protect against attack using such devices or materials against the people, territory, or interests of the United States. |
| 2 | Support CWMD steady state and surge operations that focus on real world contingencies, criminal activities, and smuggling pathways, and as requested national special security events (NSSE), special event assessment rating (SEAR) events. |
| 3 | Advises on current, emerging and forecasted threats, vulnerabilities, impacts, and other chemical defense concerns. |
| 4 | Develops and deploys surge assets to assist weapons of mass destruction (WMD) detection stakeholders in detecting and reporting WMD threats. |
| 5 | Establish a program to enhance and coordinate the means of detecting and adjudicating chemical, biological, radiological, or nuclear events of national concern. |
| 6 | Coordinate and communicate with CWMD programs to ensure successful program implementation and effectiveness and to improve overall regional capabilities. |
| 7 | Serve as the CWMD lead for operational and crisis action planning |
| 8 | Establish a training program and provide technical assistance on concepts of operation, facilitating training solutions, validating/enhancing capabilities through exercise, and maintaining effective alarm response protocols. |

## III. Action Plan Intent

This plan provides actions and milestones to accomplish the STC-MDDP integration. The Operations Support Directorate (OSD), STC, and MDDP will complete the necessary steps to

3

DHS-AR-0022

reach the end state: Unified CWMD program assets that efficiently support SLTT radiological and nuclear detection operations. Actions may be added or removed during implementation based on mission priorities and stakeholder needs. Implementation of the action plan will accomplish the following milestones:

| Milestones | |
|---|---|
| 1 | Decision memorandum from Assistant Secretary. |
| 2 | OMB and Congressional notification of STC Program changes. |
| 3 | Budget and appropriations updated and aligned to the new STC Program construct. |
| 4 | Program guidance documents updated and completed with signatures. |
| 5 | All federal and SLTTs partners are informed and integrated with program realignment. |
| 6 | Seven new MDDUs equipped, manned, trained, and funded. All 13 MDDUs co-located with STC regions and aligned to FBI Level 5 RRSTs. |

## IV. Tasks

By completing the below tasks by their deadlines, OSD, STC, and MDDP will implement the concept paper.

| Tasks to Support the Action Plan | Support | MET |
|---|---|---|
| **Within 30 Days** | | |
| 1 | Identify program and guidance documents for update; create prioritized schedule for document update (includes concept of operations, performance measures, handbooks, etc.) | OSD, RARE | 1, 5 |
| 2 | Develop communications plan based on concept paper | Comms | 1, 6 |
| 3 | Identify appropriate parties for budget discussions | OSD CBI, BFO | 5, 6 |
| 4 | Develop a cost estimate to implement the Concept | OSD, BFO | 5 |
| 5 | Provide memorandum to request acquisition authority to use the DLA contract for equipment purchasing | OSD, SSD, RARE | 5, 2, 4 |
| **Within 60 Days** | | |
| 1 | Develop a chartered interagency working group consisting of NNSA-NA 84 and FBI CIRG designed to provide a holistic regional response to detect, secure and defeat R/N devices | OSD, NNSA, FBI | 3, 4 |
| 2 | Develop a budget management plan with internal stakeholders | OSD CBI, BFO | 5 |
| 3 | Identify SOPs for updates and creation | OSD | 5 |
| 4 | Develop equipment/fleet acquisition plan for seven new MDDUs | RARE, SSD, OGC | 5 |

4

DHS-AR-0023

| | | | |
|---|---|---|---|
| 5 | Identify requirements for a common operating picture (COP) | SSD, OSD COID | 2, 4, 6 |
| **Within 90 Days** | | | |
| 1 | Notify Congress of Program Changes | Comms, Assistant Secretary's Office | 5 |
| 2 | Develop organizational structure & staffing plans | ESD | 5 |
| 3 | Conduct OMB notifications of projected funding requirements associated with Concept | CBI, BFO | 5 |
| 4 | Socialize program changes to federal partners | CWMD | 1, 6 |
| 5 | Socialize program changes to SLTT partners | CWMD | 1, 2, 4, 6 |
| 6 | Develop facilities plan for seven new MDDUs | CWMD, DHS OCRSO | 5 |
| **Within 180 Days** | | | |
| 1 | Review cooperative agreements for required changes | OGC | 5 |
| 3 | Develop and update SOPs (equipment, deployments, fleet management, file management, etc.) | OSD | 5 |
| 4 | Establish agreements for three new MDDU locations | CWMD, DHS, GSA | 5 |
| **Within 360 Days** | | | |
| 1 | Update cooperative agreements in alignment with new strategy | OGC, GFAD | 5 |
| 2 | Three new MDDU locations established with operational ready personnel, equipment, and fleet | OSD | 2, 4, 8 |
| **360+ Days** | | | |
| 1 | Establish agreements for four new MDDU locations | CWMD, DHS, GSA | 2, 4 |
| 2 | Implement COP | TBD | 2, 4, 6 |
| 3 | Four new MDDU locations established with operational ready personnel, equipment, and fleet | OSD | 2, 4, 8 |
| 4 | Ensure regional plans are updated to incorporate new operations | OSD | 1, 2, 5, 6, 8 |

5

DHS-AR-0024

**From:** [Holston, Reagan (CTR)](#)
**To:** [Holston, Reagan (CTR)](#)
**Subject:** FW: Pause on STC Purchases of Radiological and Nuclear Detection Equipment
**Date:** Monday, April 20, 2026 8:37:01 AM
**Importance:** High

---

**From:** Kuleski, Brian <[Brian.Kuleski@hq.dhs.gov](mailto:Brian.Kuleski@hq.dhs.gov)>
**Sent:** Wednesday, May 14, 2025 3:57 PM
**To:** 'Bailey, Robert W.' <[rwbailey@atlantaga.gov](mailto:rwbailey@atlantaga.gov)>; 'Price, Timothy' <[tiprice@atlantaga.gov](mailto:tiprice@atlantaga.gov)>; 'Wickes, Markeisha' <[mwickes@atlantaga.gov](mailto:mwickes@atlantaga.gov)>; 'Devine, Matthew (DEM)' <[matthew.devine@sfgov.org](mailto:matthew.devine@sfgov.org)>; 'leo.samuelson@sfgov.org' <[leo.samuelson@sfgov.org](mailto:leo.samuelson@sfgov.org)>; 'Anthony Rizzo' <[anthony.rizzo@pd.boston.gov](mailto:anthony.rizzo@pd.boston.gov)>; 'Timothy Connolly' <[timothy.connolly@pd.boston.gov](mailto:timothy.connolly@pd.boston.gov)>; 'Bethany Hand' <[bethany.hand@cityofchicago.org](mailto:bethany.hand@cityofchicago.org)>; 'Martin Li' <[martin.li@cityofchicago.org](mailto:martin.li@cityofchicago.org)>; 'Mark Zilch' <[mark.zilch@cityofchicago.org](mailto:mark.zilch@cityofchicago.org)>; 'Buhse, Caroline - OEM Grants and Finance Manager' <[caroline.buhse@denvergov.org](mailto:caroline.buhse@denvergov.org)>; 'Ibarra, Kayla - OEM CA2307 Administrator I' <[kayla.ibarra@denvergov.org](mailto:kayla.ibarra@denvergov.org)>; 'Emily Helder' <[emily.helder@lacity.org](mailto:emily.helder@lacity.org)>; 'Guan, Zhaoming' <[zguan@miamigov.com](mailto:zguan@miamigov.com)>; 'Pratt-Wilson, Latrell' <[lpratt-wilson@miamigov.com](mailto:lpratt-wilson@miamigov.com)>; 'Nanson, Louis' <[lnanson@miamigov.com](mailto:lnanson@miamigov.com)>; 'GrahamSr., Brandon W.' <[bwgraham@wmata.com](mailto:bwgraham@wmata.com)>; 'Timothy Schaible' <[tschaible@mwcog.org](mailto:tschaible@mwcog.org)>; 'acoe@mwcog.org' <[acoe@mwcog.org](mailto:acoe@mwcog.org)>; 'Thomas D Ignelzi' <[thomas.ignelzi@nola.gov](mailto:thomas.ignelzi@nola.gov)>; 'Joseph K. Wheeler, Sr' <[jwheeler@nola.gov](mailto:jwheeler@nola.gov)>; 'Neljuana T. Mallery' <[ntmallery@nola.gov](mailto:ntmallery@nola.gov)>; 'PELLEGRINO, COLLEEN' <[colleen.pellegrino@nypd.org](mailto:colleen.pellegrino@nypd.org)>; 'GOLDEN, PATRICK' <[patrick.golden@nypd.org](mailto:patrick.golden@nypd.org)>; 'MOONEY, KAITLYN' <[kaitlyn.mooney@nypd.org](mailto:kaitlyn.mooney@nypd.org)>; 'Aimee Mankins ([aimee.mankins@maricopa.gov](mailto:aimee.mankins@maricopa.gov))' <[aimee.mankins@maricopa.gov](mailto:aimee.mankins@maricopa.gov)>; 'Megan Madison (SEC)' <[megan.madison@maricopa.gov](mailto:megan.madison@maricopa.gov)>; 'Yin, Tai' <[tai.yin@seattle.gov](mailto:tai.yin@seattle.gov)>; 'Elliott, James' <[james.elliott@seattle.gov](mailto:james.elliott@seattle.gov)>
**Cc:** Harvey, Ki <[ki.harvey@hq.dhs.gov](mailto:ki.harvey@hq.dhs.gov)>; Senior, Timothy <[Timothy.Senior@hq.dhs.gov](mailto:Timothy.Senior@hq.dhs.gov)>; GILL, GINA <[GINA.GILL@hq.dhs.gov](mailto:GINA.GILL@hq.dhs.gov)>
**Subject:** Pause on STC Purchases of Radiological and Nuclear Detection Equipment

**MEMORANDUM**                                    **Date: 5/14/2025**

**FOR:**      Securing the Cities Regional Program Managers


**FROM:**      Brian Kuleski
              Securing the Cities Program Manager
              Countering Weapons of Mass Destruction


**SUBJECT:**   Pause on STC Purchases of Radiological and Nuclear Detection Equipment


**Purpose:**  Notification to the STC Regional Program Managers regarding pause in procurement of radiological nuclear detection equipment and supplies.

**Background**: Due to current Federal funding constraints, the STC Program must pause on all radiological and nuclear detection equipment purchases. Equipment under this stop order

DHS-AR-0025

includes all personal radiation detectors, radiological isotope identification devices, radiological/nuclear detection backpacks, and radiological/nuclear mobile detection systems. Purchases underway that have not been accepted need to be paused until further notice. This memorandum applies to currently awarded cooperative agreement funds and carryover funding.

V/r

Brian

**Brian Kuleski**
**Divison Director - Securing the Cities / Mobile Detection Deployment Program**
**Countering Weapons of Mass Destruction / Program Support Division**
**U.S. Department of Homeland Security**
**202-254-7131 (O)**
**202-525-8774 (C)**

DHS-AR-0026

## Naylor, Jenny

| | |
|---|---|
| **From:** | Kuleski, Brian |
| **Sent:** | Wednesday, May 14, 2025 3:57 PM |
| **To:** | 'Bailey, Robert W.'; 'Price, Timothy'; 'Wickes, Markeisha'; 'Devine, Matthew (DEM)'; 'leo.samuelson@sfgov.org'; 'Anthony Rizzo'; 'Timothy Connolly'; 'Bethany Hand'; 'Martin Li'; 'Mark Zilch'; 'Buhse, Caroline - OEM Grants and Finance Manager'; 'Ibarra, Kayla - OEM CA2307 Administrator I'; 'Emily Helder'; 'Guan, Zhaoming'; 'Pratt-Wilson, Latrell'; 'Nanson, Louis'; 'GrahamSr., Brandon W.'; 'Timothy Schaible'; 'acoe@mwcog.org'; 'Thomas D Ignelzi'; 'Joseph K. Wheeler, Sr'; 'Neljuana T. Mallery'; 'PELLEGRINO, COLLEEN'; 'GOLDEN, PATRICK'; 'MOONEY, KAITLYN'; 'Aimee Mankins (aimee.mankins@maricopa.gov)'; 'Megan Madison (SEC)'; 'Yin, Tai'; 'Elliott, James' |
| **Cc:** | Harvey, Ki; Senior, Timothy; GILL, GINA |
| **Subject:** | Pause on STC Purchases of Radiological and Nuclear Detection Equipment |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**MEMORANDUM**                                      **Date: 5/14/2025**

**FOR:**     Securing the Cities Regional Program Managers


**FROM:**     Brian Kuleski
Securing the Cities Program Manager
Countering Weapons of Mass Destruction

**SUBJECT:**  Pause on STC Purchases of Radiological and Nuclear Detection Equipment

**Purpose:**  Notification to the STC Regional Program Managers regarding pause in procurement of radiological nuclear detection equipment and supplies.

**Background**: Due to current Federal funding constraints, the STC Program must pause on all radiological and nuclear detection equipment purchases. Equipment under this stop order includes all personal radiation detectors, radiological isotope identification devices, radiological/nuclear detection backpacks, and radiological/nuclear mobile detection systems. Purchases underway that have not been accepted need to be paused until further notice. This memorandum applies to currently awarded cooperative agreement funds and carryover funding.

V/r

Brian

**Brian Kuleski**
**Divison Director - Securing the Cities / Mobile Detection Deployment Program**
**Countering Weapons of Mass Destruction / Program Support Division**
**U.S. Department of Homeland Security**
**202-254-7131 (O)**
**202-525-8774 (C)**

1

DHS-AR-0027

2

DHS-AR-0028